IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA – FAIRBANKS DIVISION

RECEIVED
OCT 28 2025
CLERK, U.S. DISTRICT COURT
FAIRBANKS, AK

CORRINE BIEDERMAN,

Plaintiff,

v.

ALASKA RIVERWAYS, INC., doing business as Riverboat Discovery; THE BINKLEY GROUP, LLC; WADE BINKLEY, President; and BRIAN TAMSE, Operations Manager,

Defendants.

Case No. _____

**COMPLAINT FOR WHISTLEBLOWER RETALIATION, DEFAMATION, NEGLIGENT SUPERVISION, SPOLIATION OF EVIDENCE, AND LATE FINAL WAGES**

**JURY TRIAL DEMANDED**

## I. INTRODUCTION

1. Plaintiff Corrine Biederman ("Plaintiff") brings this civil action against Defendants for whistleblower retaliation, defamation, negligent supervision, intentional spoliation of evidence, and late payment of final wages, arising from her reports of serious workplace safety, sanitation, and environmental violations while employed by Alaska Riverways, Inc. (d/b/a Riverboat Discovery).

2. After Plaintiff engaged in protected activity by reporting hazards—including lead-based paint, denial of restroom access, lack of PPE and life-safety equipment, and improper dumping near the Chena River—Defendants reduced her hours and then terminated her employment.

3. Plaintiff seeks full relief, including compensatory and punitive damages, equitable relief, costs, and all other appropriate remedies.

## II. JURISDICTION AND VENUE

4. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 because claims include whistleblower retaliation related to the Occupational Safety and Health Act's anti-retaliation protections (29 U.S.C. § 660(c)) and related federal public policy.

5. Plaintiff has exhausted available administrative remedies with OSHA/Whistleblower Protection Program and is properly before this Court.

Pg 1 of 7

6.     The Court has supplemental jurisdiction over state-law claims (defamation, negligent supervision, spoliation, late final wages) under 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts.

7.     Venue is proper in the District of Alaska, Fairbanks Division, under 28 U.S.C. § 1391 because the events and omissions giving rise to these claims occurred in Fairbanks, Alaska, and Defendants reside and/or conduct business there.

## III. PARTIES

8.     Plaintiff Corrine Biederman is an adult resident of Fairbanks, Alaska, residing at 1721 University Avenue South, Apartment C-8, Fairbanks, Alaska 99709.

9.     Defendant Alaska Riverways, Inc., d/b/a Riverboat Discovery, is an Alaska corporation headquartered at 1975 Discovery Drive, Fairbanks, Alaska 99709.

10.     Defendant The Binkley Group, LLC ("Binkley Group") is, on information and belief, the parent or controlling company exercising ownership and control over Alaska Riverways, Inc.

11.     Defendant Wade Binkley is President of Alaska Riverways, Inc. and the Binkley Group, with management authority.

12.     Defendant Brian Tamse ("Tamse") was Operations Manager for Riverboat Discovery and Plaintiff's direct supervisor.

## IV. FACTUAL ALLEGATIONS

### A. Hiring, Schedule, and Immediate Sanitation Problems

13.     On June 11, 2024, Plaintiff contacted Riverboat Discovery regarding a painter position; on June 19, 2024, Tamse instructed her to begin work June 24, 2024.

14.     From her first day, Plaintiff observed unsafe and unsanitary conditions, including lack of access to palatable, potable drinking water, denial of restroom access after 5:00 p.m. (shop) and 6:00 p.m. (D3), and practices exposing workers to potential environmental hazards near the river.

15.     Plaintiff was told co worker that bathrooms would be locked after 5:00–6:00 p.m. and she should "figure it out," indicating wooded areas under surveillance cameras and visible to the public.

16.     Plaintiff was born with one functioning kidney and is prescribed Hydrochlorothiazide a diaretic for high blood pressure, requiring frequent hydration and restroom access. Because of bathroom denial, she restricted hydration and at times stopped her medication.

17.     Plaintiff suffered illness, headaches, light-headedness, and humiliation from being forced to urinate outdoors; these conditions violated OSHA Sanitation standards (29

C.F.R. § 1910.141).

**B. Lead Paint and Environmental Hazards (Testing, Reporting, and Knowledge)**

18. While working on Discovery 2 ("D2"), Plaintiff observed "gatoring" paint patterns consistent with aged lead-based paint (Exhibit 6).

19. Between June 26 and July 2, 2024, Plaintiff repeatedly requested lead testing from Tamse, including a June 29 text message requesting a lead test (Exhibit 6A).

20. On July 2, 2024, in a recorded call, Tamse minimized the need, asked if Plaintiff would buy the test herself, then agreed to obtain and supply the lead test for the next day (Exhibit 3A).

21. On July 3, 2024, Plaintiff and a coworker used the employer-provided test materials and obtained positive results for lead on areas including the Wheelhouse and bow ceiling (visuals in Exhibit 6B).

22. Plaintiff immediately reported these results to Tamse (Exhibit 3B). During their discussion, Tamse stated that Wade Binkley "wasn't sure" about the Wheelhouse—showing prior corporate awareness of possible lead on that section (Exhibit 6B reference with photos of the Wheelhouse gatoring).

23. Despite the positive lead results, management did not halt work on or around D2; Plaintiff still had to board D2 to retrieve supplies, and work continued in areas on/near D2.

24. Plaintiff was assigned to work over water without a life jacket and was not provided respirators.

25. Plaintiff also reported environmental concerns, including that she was "saving up the buckets of paint water" because she did not want to dump them on the ground near the river; management did not address the concern (Exhibit 5A).

26. On or about July 19, 2024, Plaintiff and a manager observed approximately 30–40 uncapped/leaking containers of oil or chemicals and open tubs of used fryer grease approximately 20 feet from the Chena River.

**C. Retaliation, Termination, and Post-Termination Wage Issues**

27. Immediately after the July 3 lead report, Plaintiff's hours were cut from 40 to 20 per week (Exhibit 3B).

28. On July 22, 2024, during a recorded call, Tamse terminated Plaintiff, apologizing for lack of PPE and bathroom access, and stating that "painting wasn't a priority" and " (Exhibit 4).

29. Within days, Defendants reposted the painter position (around August 8, 2024), demonstrating pretext.

30. Defendants failed to timely pay Plaintiff's final wages under Alaska law. Plaintiff was terminated on July 22, 2024 (a Monday). Under Alaska final-pay rules, she should have been paid no later than July 25, 2024 (three working days).

31. On July 30, 2024, Plaintiff texted Tamse stating she had not been paid and that state law required payment within three working days; on July 31, 2024, Tamse replied that the check was "mailed" on July 24 to the address on file. Plaintiff did not actually receive the check until August 5, 2024 (Exhibit 9A).

32. Defendants' late final paycheck payment violated Alaska wage-payment requirements and entitles Plaintiff to statutory penalties.

**D. Defamation to OSHA**

33. Plaintiff filed OSHA complaints on or about August 1–2, 2024.

34. In an August 7, 2024 written response to OSHA, signed "Bryan Tamse," Defendants falsely claimed Plaintiff conducted an "at-home" lead test without permission/knowledge and alleged Plaintiff stated she "knew where our ice machines were and could poison our guests" (Exhibit 2).

35. These statements were false and malicious. The claim that management lacked knowledge is directly contradicted by the July 2 authorization call (Exhibit 3A) and the July 3 discussion showing corporate awareness of lead and the Wheelhouse (Exhibit 3B, Exhibit 6B). The "poison" allegation imputes a serious criminal act and constitutes defamation per se.

**E. Post-Termination Spoliation (Shredway Media Destruction)**

36. After termination, Plaintiff worked for Shredway as a driver and media/document destruction technician from approximately September 2024 through February 2025, confirmed by her Shredway badge or pay records (Exhibit 9).

37. During winter 2024–2025 (on information and belief between November 2024 and February 2025, likely around January), Plaintiff's Shredway supervisor/owner assigned her a destruction task for an estimated eighty (80) media tapes described as surveillance recordings from Riverboat Discovery.

38. On information and belief, Riverboat Discovery sent those tapes to Shredway after federal Whistleblower personnel had instructed the company not to destroy relevant evidence.

39. The transfer and destruction of surveillance media after preservation instructions constitutes spoliation and was willfully undertaken to conceal misconduct and prejudice Plaintiff's claims.

**V. CAUSES OF ACTION**

**Count I – Whistleblower Retaliation (OSH Act/Public Policy)**

40. Plaintiff incorporates paragraphs 1–39.

41. Plaintiff engaged in protected activity by reporting safety, sanitation, and environmental hazards and by requesting/performing employer-authorized lead testing.

42. Defendants retaliated against Plaintiff by cutting her hours and terminating her shortly thereafter. Temporal proximity and pretext (reposting the job) demonstrate retaliatory motive.

43. Plaintiff suffered damages as a result.

## Count II – Defamation (Per Se)

44. Plaintiff incorporates paragraphs 1–43.

45. Defendants published false statements to OSHA and others, including the fabricated "poison the ice" accusation and the false claim that Plaintiff performed an unauthorized "at-home" lead test.

46. These statements were knowingly false, made with actual malice, and constitute defamation per se by imputing criminal conduct.

47. Plaintiff suffered reputational harm, emotional distress, and other damages.

## Count III – Negligent Supervision and Failure to Provide a Safe Workplace

48. Plaintiff incorporates paragraphs 1–47.

49. Defendants owed duties to provide safe working conditions, sanitary facilities, potable water, and appropriate PPE and life-safety equipment.

50. Defendants breached those duties, causing Plaintiff physical symptoms, aggravation of kidney-related health risks due to bathroom denial/dehydration, emotional distress, and economic loss.

## Count IV – Intentional Spoliation of Evidence

51. Plaintiff incorporates paragraphs 1–50.

52. After preservation instructions from federal personnel, Defendants (on information and belief) caused or authorized destruction of approximately 80 surveillance tapes sent to Shredway, foreseeably prejudicing Plaintiff's ability to prove her claims.

53. Defendants acted willfully and in bad faith; Plaintiff seeks sanctions and damages.

## Count V – Late Final Wages (AS yes 23.05.140)

54. Plaintiff incorporates paragraphs 1–53.

55. Defendants failed to timely pay Plaintiff's final wages within the deadline required by Alaska statute AS 23.05.140(b) following her July 22, 2024 termination; she did not receive her final paycheck until August 5, 2024, despite notifying management on July 30 and receiving a July 31 acknowledgement of mailing (Exhibit 9A).

56. defendant violation of a AS 23. 05.140(b) entitles plaintiff to statutory penalties under a AS 23.05. 140(d) which includes payment of the employees regular wage for up to ninety (90) working days.

## VI. DAMAGES

57. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer damages including, but not limited to: lost wages and benefits; emotional distress, humiliation, and mental anguish; reputational harm; physical impacts associated with bathroom denial and hydration/medication disruption; loss of future earning capacity; and other compensatory and punitive damages to be determined at trial.

## VII. PRAYER FOR RELIEF

58. Plaintiff respectfully requests that the Court enter judgment in her favor and award the following relief:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages for willful and malicious conduct;

c. Back pay, front pay, and restoration of lost benefits;

d. Injunctive and equitable relief requiring compliance with workplace safety, sanitation, environmental, and evidence-preservation obligations;

e. Statutory penalties and relief for late final wages;

f. Costs of suit, reasonable attorney's fees where recoverable by statute, and pre- and post-judgment interest; and

g. Such other and further relief as the Court deems just and proper.

## VIII. DEMAND FOR JURY TRIAL

59. Plaintiff demands a trial by jury on all issues so triable.

## IX. CONTACT AND SIGNATURE

60. Respectfully submitted,

Dated: ~~October 27, 2025~~ October 28, 2025

Corrine Biederman (Pro Se) /s/

1721 University Ave South APT C8
Fairbanks, AK 99709
907-251-6711
cbiederman907@gmail.com

Fairbanks, Alaska 99709

Phone: (907) 251-6711

Email: cbiederman907@gmail.com

**EXHIBIT LIST**

✓ 1. Exhibit 1 – OSHA closing letter dated October 8, 2024 (Complaint No. 2195281).

✓ 2. Exhibit 2 – Employer's OSHA response dated August 7, 2024 (signed "Bryan Tamse") alleging unauthorized "at-home" test and "poison" statement.

✓ 3. Exhibit 3A – July 2, 2024 audio transcript: Lead-test authorization by Tamse (direct proof the testing was employer-authorized).

✓ 4. Exhibit 3B – July 3, 2024 audio transcript / lead-test video: Positive lead findings; Tamse's knowledge and acknowledgment of Wheelhouse concerns (corporate knowledge).

✓ 5. Exhibit 4 – July 22, 2024 audio transcript (termination call): Admissions of no PPE/supplies/restroom and "we set you up to fail" (pretext/retaliation). + text messages

✓ 6. Exhibit 5A – Text message from Plaintiff to Tamse reporting dumping concern (protected environmental report). (NO responce)

✓ 7. Exhibit 7 – Medication Bottle photo Prescribed to Plaintiff.

✓ 8. Exhibit 6 – Photos showing "gatoring" patterns on D2 suggesting lead-based paint. + positive test photos + Texts reporting Positive Lead results to Brian Tamse on 7/3/24

✓ 9. Exhibit 6A – June 29, 2024 text from Plaintiff to Tamse requesting a lead test.

✓ 10. Exhibit 6B – Photos showing positive lead test locations (Wheelhouse/bow ceiling) and sander dust.

✓ 11. Exhibit 7 – OSHA Notification Letter from WBP Timothy Larson to NOT destroy evidence in WBP case # 301041893

✓ 12. Exhibit 8 – Job postings re-advertising the painter position in early August 2024 (pretext).

✓ 13. Exhibit 9 – Plaintiff's Shredway employment badge and/employment records (Sept. 2024–Feb. 2025) corroborating post-termination employment and role (context for spoliation timeline).

Pg 7 of 7